OPINION OF THE COURT
Martin Evans, J.
This article 78 proceeding to review and set aside respondent’s order dated June 26,1980, and to direct respondent to conduct a fair hearing on the issue of the date of completion of certain reports, is granted.
In March, 1973, four violations, none of which were hazardous or rent impairing, were issued, relating to one apartment in petitioner’s premises. These were apparently corrected by July of 1973, and certifications of their removal were duly mailed by the landlord to the respondent. Apparently as the result of some carelessness in filing, the respondent did not properly file these; and the violations remained on record.
This resulted in a denial on October 24,1974 of petitioner’s application for an MBR increase for the period 1974/1975.
*272 After bringing this case to the attention of the respondent by protest dated December 5, 1974, the respondent revoked the October 24, 1974 denial and granted the MBR increase, effective April 1, 1974. This revocation was effected by order dated April 29, 1975. The revocation was properly based on the fact that the violations had indeed been timely corrected (even though, by reason of the respondent’s accidental misfiling, the actual dismissal of the violations did not take place until November 21,1974 after the misfiling had been discovered by petitioner and brought to the attention of respondent) and was also based on the properly filed certifications.
For some unknown reason, and without notice to petitioner, in November, 1975 the respondent, through his local officers, made a determination that the order granting the 1974-1975 MBR increase should not have been effective on April 1, 1974, in accordance with the order of April 29, 1975; but that it should have been effective as of June 1, 1975.
This determination was erroneous. The effect of the erroneous determination was, however, not felt by petitioner until 1980, and as a result of it he has been ordered to refund more than $11,000 to all of his tenants. It is because of this, that this proceeding has been commenced.
The determination of November, 1975 was erroneous because it relied on the belief of the examiner, that the violation had not been corrected until the date of their dismissal of record, which took place when the misfiling error had been brought to the attention of the respondent; wherein they had actually been corrected prior to July of 1973.
The examiner concluded, as a result of his belief that there had been a late correction of the violation, that the petitioner should have entered into a “No money” contract. If in fact, the violations had not been corrected in a timely fashion, that conclusion would have been correct. However, the underlying basis for that conclusion did not exist. The fault lay not with petitioner, but by reason of the misfiling in respondent’s office.
*273 That the violations were in fact timely corrected is also shown by a certificate of the tenant in whose apartment these four minor violations had occurred.
There was, therefore, no necessity for entrance into a “no money” contract, under these circumstances.
Petitioner duly protested the November, 1975 order of revocation and modification, but on September 19, 1978, Protest Docket No. CPLX 2650, the respondent denied the protest. His grounds for the denial were erroneous. He found that the assertions by petitioner as to the correction of the four violations were true, but because the housing inspectors did not visit the premises until November 21, 1974, and reported that the violations were corrected, the respondent relied “on the inspection reports of the Housing Maintenance Inspectors because they are more credible and of greater probative value than the conflicting evidence submitted on behalf of the landlord.”
This, in the context of this case, is a meaningless and sham reliance. The report of the housing inspectors was not at variance with the petitioner’s evidence; it confirmed that the violations had been corrected.
The date on which the work was done was not disputed by the inspectors; their late inspection, about one and one-half years after the corrective work, was caused by the misfiling of the petitioner’s original certification. Neither was the landlord’s evidence conflicting in any respect.
On December 14, 1979, the respondent, after receiving complaints of overcharges from various tenants, based upon the original change in the 1974/1975 MBR order from an effective date of April 1, 1974 to June 1, 1975 (as a result of his earlier erroneous determination) issued orders of refund. On February 5, 1980 the petitioner protested those orders, and on June 26,1980 the respondent, relying on his order of September 19, 1978 (Protest Docket No. CPLX 2650) and on the reasoning that petitioner could not collaterally attack that order, denied the protest.
It is from that denial that this article 78 proceeding has been taken; petitioner seeks not only a review of the order *274 of June 26, 1980, but requests that the entire matter be remitted to respondent for a fair hearing including the completion of the repairs to the four violations which was the basis for this entire case.
Respondent claims that the petition must be denied because it is a “collateral” attack on the order of September, 1978 from which order petitioner took no proceeding. In effect, respondent claims that the passage of time precludes any possibility of correction of any prior error.
Respondent, however, has the power to correct errors, even though the time for an appeal, a protest, or an article 78 proceeding has passed. This power is derived from subdivision b of section Y51-5.0 of the Administrative Code of the City of New York which reads as follows: “b. Such agency, to effectuate the purposes of this title, and in accordance with the standards set forth in paragraph (2) of subdivision c of this section, may set aside and correct any maximum rent resulting from illegality, irregularity in vital matters or fraud, occurring prior to or after May first, nineteen hundred sixty-two.”
Section Y51-5.0 (subd c, par [2]) of the Administrative Code states: “(2) [s]uch rents shall be established, having regard for *** any other factors bearing on the equities involved consistent with the purposes of this title.”
The respondent apparently relied on its power under those sections when, without notice or an opportunity to be heard, it revoked its order of April 29,1975 and substituted its order of November 21, 1975, even though the time for protest, appeal or an article 78 proceeding directed against the April 29, 1975 order had passed.
Respondent therefore is not without power to review, even at this time, its order of September 19, 1978. Its refusal to do so on the alleged ground that the time to protest or appeal has passed, amounts to abdication of its power which, under the circumstances of this case, is arbitrary and capricious, and must therefore be set aside. Equity and justice require a hearing which is within the power of respondent to grant.
*275 The petition is therefore granted, and respondent is directed to afford petitioner a hearing as to the issues involved.